IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED MEDIA NETWORKS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES CELLULAR<br>CORPORATION D/B/A U.S. CELLULAR,<br><br>    Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Advanced Media Networks, LLC files this Complaint for patent infringement against Defendant United States Cellular Corporation d/b/a U.S. Cellular, and alleges as follows:

## PARTIES

1.      Plaintiff Advanced Media Networks, LLC ("Advanced Media") is a California limited liability company having a place of business at 5900 Wilshire Boulevard, Suite 2600, Los Angeles, CA  90036.

2.      Advanced Media (formerly NeTune Communications Inc.) is in the business of designing and building advanced visual communications systems, integrated collaborative systems, and converged networks and systems.  It was formed in the mid-1990's by the inventor Curtis Clark and others for the express purpose of developing mobile systems that would enable the streaming of video and other data from remote locations.  Advanced Media's development efforts are reflected in the eleven (11) US and European patents, including the patent-in-suit, that it owns and practices today.  Advanced Media has worked closely with Hollywood Studios providing mobile WiFi networks on location for productions such as the Harry Potter series of motion pictures, Blackhawk Down, Spiderman, and numerous other motion picture and

television productions, and continues to offer these services to the motion picture and other industries. Advanced Media has licensed the patent-in-suit to multiple mobile wireless network equipment and service providers for which Advanced Media is currently a global certified reseller of such equipment and services.

3. Defendant United States Cellular Corporation d/b/a U.S. Cellular ("U.S. Cellular") is a corporation organized under the laws of the State of Delaware, and has a principal place of business at 8410 W. Bryn Mawr, Suite 700, Chicago, Illinois  60631.  U.S. Cellular has a registered agent for service, The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, DE  19808.

## JURISDICTION AND VENUE

4. This civil action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et* seq.  This Court has jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. On information and belief, U.S. Cellular makes, imports, uses, sells, and/or offers for sale the Accused Instrumentalities and Services (as defined below) within the United States, including this District, that infringe one or more claims of United States Patent No. 5,960,074 entitled "MOBILE TELE-COMPUTER NETWORK FOR MOTION PICTURE, TELEVISION AND TV ADVERTISING PRODUCTION " (the "`074 Patent" or "Asserted Patent").  The `074 Patent was duly and legally issued by the United States Patent and Trademark Office on September 28, 1999.  A true and correct copy of the `074 Patent is attached hereto as Exhibit 1.

6. On May 11, 2010, a request for reexamination was filed.  On November 22, 2011, a reexamination certificate was issued that, among other things, confirmed the patentability of

Claims 1, 10-14, 21-28, and 37-38.  Other claims were confirmed as amended, and new claims were added.  A true and correct copy of the reexamination certificate is shown in Exhibit 1.

7.  On November 29, 2012 and February 6, 2013, two additional reexamination requests were filed.  These requests were merged.  On April 23, 2014, a reexamination certificate was issued that, among other things, confirmed the patentability of Claims 1-23, 28-37, 41-42, 44-63, 67-70, 72-73, 75-76, 91-99, 101-107, 123-124, and 126.  The patentability of other claims was confirmed as amended, and new claims were added.  A true and correct copy of the reexamination certificate is shown in Exhibit 1.

8.  U.S. Cellular operates a nationwide digital wireless telecommunications system, and in particular, operates the system to offer wireless services, including wireless broadband services, to subscribers through its individual markets or through the use of roaming agreements with other wireless carriers to provide service to its customers in areas not covered by U.S. Cellular's network. Exhibit 2, Form 10-K for U.S. Cellular Inc. dated December 31, 2013, p. 4 of 177.  At least as of December 31, 2013, "U.S. Cellular's consolidated operating markets serve approximately 4.8 million customers in 23 states," including Delaware. *Id.* at p. 4 of 177 ; *see also* Exhibit 3, U.S. Cellular coverage map.  "U.S. Cellular operates in one reportable segment, wireless operations, and all of its wireless operating markets are in the United States." *Id.* Hence, U.S. Cellular markets and sells its wireless services throughout the United States, including within this District.

9.  On information and belief, U.S. Cellular directly and/or indirectly imports, manufactures, uses, offers for sale, and/or sells the Accused Instrumentalities and Services (as defined below) within the United States, including this District, that infringe one or more claims of the `074 Patent.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(c).

## GENERAL ALLEGATIONS

11. Advanced Media is the owner by assignment of the Asserted Patent, and is entitled to sue for past and future infringement thereof.

## U.S. CELLULAR

### U.S. Cellular's Accused Wireless Telecommunications Network

12. U.S. Cellular is engaged in the business of selling digital wireless services to subscribers. U.S. Cellular operates a vast wireless telecommunications network over which subscribers are able to communicate voice data as well as other data using broadband services. U.S. Cellular's network consists of a large multitude of cells that communicate with mobile devices via microwaves. The cells typically provide redundant overlapping coverage for a given area such that a subscriber moving with a U.S. Cellular device from one area to the next may seamlessly be handed-off from one cell to the next without dropping service. *See, e.g.*, Newton's Telecom Dictionary, 16th Edition, p. 165 (16th Ed. 2000) (attached hereto as Exhibit 4, under the definition of "Cell Switching"). Hence, the U.S. Cellular system (the "Accused System") constitutes a "redundant microwave communication system" as this phrase is used in claims of the `074 Patent.

### U.S. Cellular's Accused Consumer Devices

13. A subscriber to U.S. Cellular's services over the Accused System typically buys or leases a digital communications device such as a smart phone, tablet computer ("tablet"), router, gateway, or other mobile device containing a WLAN network access point (*i.e.* "hotspot").

**U.S. Cellular's Accused Smart Phones**

14.     Examples of smart phones currently imported, offered for sale, and/or sold by U.S. Cellular are the Alcatel One Touch Shockwave, Apple iPhone 5s, Apple iPhone 6, Apple iPhone 6 Plus, BlackBerry Curve 9350, Huawei Ascend Y, LG Splendor, Motorola Electrify M, Motorola Moto G, Motorola Moto X, Samsung ATIV Odyssey, Samsung Galaxy Mega, Samsung Galaxy Note 10.1, Samsung Galaxy S III, Samsung Galaxy S 4, Samsung Galaxy S 4 Mini, Samsung Galaxy S 5, ZTE Grand S Pro, ZTE Imperial, ZTE Render, and all past, present and future cellular phones that offer connectivity to other devices to the U.S. Cellular network over a local area network provided by the device (these and all similar cellular phones referred to herein as the "Accused Phones").  Each of these Accused Phones may be configured to constitute a "mobile hub station configured to transfer information as a single nomadic transmission/reception point between the microwave communication system", *i.e.,* the U.S. Cellular telecommunications system, and a "wireless LAN [local area network] using an Ethernet packet switching," "the TCP/IP protocol," and/or "an Internet protocol" (as these terms are used in the claims, *e.g.,* Claims 1, 3, and 128, of the `074 Patent).  Whether or not a subscriber may utilize the mobile hotspot or tethering feature of an Accused Phone is controlled by U.S. Cellular.

15.     For example, the Alcatel One Touch Shockwave provides a local area network to which another device may connect through the Alcatel One Touch Shockwave acting as a wireless hub to provide connectivity to the U.S. Cellular telecommunications network when the "Portable Wi-Fi hotspot" mode is enabled.  *See* Exhibit 5, pp. 1 – 3.  As noted in the U.S. Cellular guide for the Alcatel One Touch Shockwave, the hotspot feature "requires a subscription

to the applicable modem plan." *Id*. at p. 2. Hence, U.S. Cellular controls whether or not a user may utilize the Alcatel One Touch Shockwave as a mobile hotspot.

16. As another example, the Apple iPhone 6 provides a local area network to which another device may connect the iPhone acting as a wireless hub to provide connectivity to the U.S. Cellular telecommunications network when the "Personal Hotspot" is enabled. *See* Exhibit 6, pp. 38 (under "Personal Hotspot": "Use Personal Hotspot to share your iPhone Internet connection. Computers can share your Internet connection using Wi-Fi…."). The manual for the Apple iPhone 6 notes "[The Personal Hotspot] feature may not be available with all carriers. Additional fees may apply. Contact your carrier for more information." *Id*. at p. 38. Hence, U.S. Cellular controls whether or not a user may utilize the Apple iPhone 6 as a mobile hotspot.

17. As another example, the BlackBerry Curve 9350 provides a local area network to which another device may connect through the BlackBerry Curve 9350 acting as a wireless hub to provide connectivity to the U.S. Cellular telecommunications network when the "Mobile Hotspot" mode is enabled. *See* Exhibit 7, pp. 274 – 277 (under heading "How to: Mobile Hotspot mode", "Mobile Hotspot mode basics."). As noted in the manual for the BlackBerry Curve 9350, devices connected through the Mobile Hotspot feature "use the mobile network connection on [the customer's] smartphone." *Id*. at p. 274. Hence, U.S. Cellular controls whether or not a user may utilize the BlackBerry Curve 9350 as a mobile hotspot.

18. As another example, the Huawei Ascend Y phone provides a local area network to which another device may connect through the Huawei Ascend Y acting as a wireless hub to provide connectivity to the U.S. Cellular telecommunications network when the "Portable Wi-Fi hotspot" mode is enabled. *See* Exhibit 8, p. 1 ("Share your data connection with other devices by turning your phone into a wireless router"). As noted in the U.S. Cellular guide for the Huawei

6

Ascend Y, the hotspot feature uses the phone's data connection. *Id*. Hence, U.S. Cellular controls whether or not a user may utilize the Huawei Ascend Y as a mobile hotspot.

19. As another example, the LG Splendor phone provides a local area network to which another device may connect through the LG Splendor acting as a wireless hub to provide connectivity to the U.S. Cellular telecommunications network when the "Portable Wi-Fi Hotspot" is enabled. *See* Exhibit 9, pp. 46 – 47 (under "Sharing your phone's data connection": "You can also share your phone's data connection with more than a single device at a time by turning your phone into a portable Wi-Fi hotspot."). As noted in the manual for the LG Splendor, the "Portable Wi-Fi Hotspot" feature uses the phone's data connection. *Id*. Hence, U.S. Cellular controls whether or not a user may utilize the LG Splendor as a mobile hotspot.

20. As another example, the Motorola Moto X phone provides a local area network to which another device may connect through the Motorola Moto X acting as a wireless hub to provide connectivity to the U.S. Cellular telecommunications network when the "Wi-Fi hotspot" is enabled. *See* Exhibit 10, p. 2(under "Wi-Fi hotspot": "You can make your phone a W-Fi hotspot to provide portable, convenient internet access to other Wi-Fi enabled devices."). As noted in the manual, this feature "uses the mobile network for Internet access." *Id*. Hence, U.S. Cellular controls whether or not a user may utilize the Motorola Moto X as a mobile hotspot.

21. As another example, the Samsung Galaxy S 5 phone provides a local area network to which another device may connect through the Samsung Galaxy S 5 acting as a wireless hub to provide connectivity to the U.S. Cellular telecommunications network when the "Portable Wi-Fi Hotspot" feature is enabled. *See* Exhibit 11, p. 158 (under "Portable Wi-Fi hotspot": "This feature allows you to turn your device into a Wi-Fi hotspot."). The manual for the Samsung Galaxy S 5 notes, "You must have a tethering plan on your account in order to use

the Portable Wi-Fi hotspot." Hence, U.S. Cellular controls whether or not a user may utilize the Samsung Galaxy S 5 as a mobile hotspot.

22. As another example, the ZTE Grand S Pro phone provides a local area network to which another device may connect through the ZTE Grand S Pro acting as a wireless hub to provide connectivity to the U.S. Cellular telecommunications network when the "Portable Wi-Fi Hotspot" feature is enabled. *See* Exhibit 12, p. 55 ("Share Your Mobile Data Connection as a Portable Wi-Fi Hotspot"). As noted in the manual for the ZTE Grand S Pro, "[T]he Portable Wi-Fi Hotspot feature" "needs data connection on a mobile network and may result in data charges." Id. Hence, U.S. Cellular controls whether or not a user may utilize the ZTE Grand S Pro as a mobile hotspot.

### U.S. Cellular's Accused Tablets

23. In addition to the Accused Phones, U.S. Cellular also offers for sale and sells the following tablet devices that have the capability to connect to the U.S. Cellular broadband wireless network as well as providing a local area network (LAN) over which other devices may connect to the U.S. Cellular wireless network: Apple iPad Air and Apple iPad Air 2, Apple iPad Mini, Apple iPad Mini with Retina display, Apple iPad with Retina display, Samsung Galaxy Tab 4 10.1, and all past, present and future tablets that offer connectivity to other devices to the U.S. Cellular network over a local area network provided by the device (these and all similar mobile tablets referred to herein as the "Accused Tablets"). Each of these Accused Tablets may be configured to constitute a "mobile hub station configured to transfer information as a single nomadic transmission/reception point between the microwave communication system", *i.e.,* the U.S. Cellular telecommunications system, and a "wireless LAN [local area network] using an

8

Ethernet packet switching protocol," "the TCP/IP protocol," and/or "an Internet protocol" (as terms are used in the claims, *e.g.* Claims 1, 3, and 128, of the `074 Patent).

### U.S. Cellular's Accused Mobile Access Points

24. In addition to the Accused Phones and Accused Tablets, U.S. Cellular also offers for sale and sells base stations, including but not limited to the ZTE Unite II Mobile Hotspot (*See* Exhibit 13) and the U.S. Cellular Vehicle Entertainment Hub (*See* Exhibit 14), each of which connects to the U.S. Cellular wireless network and provides a mobile local area network (LAN) through which other devices may connect to the U.S. Cellular network. All past, present and future mobile stations that offer connectivity to other devices to the U.S. Cellular network over a local area network provided by the device are referred to herein as the "Accused Mobile Access Points." The Accused Phones, Accused Tablets, and Accused Mobile Access Points are collectively referred to herein as the "Accused Devices." Each of these Accused Mobile Access Points may be configured to constitute a "mobile hub station configured to transfer information as a single nomadic transmission/reception point between the microwave communication system", *i.e.,* the U.S. Cellular telecommunications system, and a "wireless LAN [local area network] using an Ethernet packet switching protocol," "the TCP/IP protocol," and/or "an Internet protocol" (as these terms are used in the claims, *e.g.,* Claims 1, 3, and 128, of the `074 Patent).

### U.S. Cellular Controls Access to its Telecommunications System

25. A subscriber who purchases one of the Accused Devices must subscribe to a U.S. Cellular data plan to use the device to connect to the internet over U.S. Cellular's wireless network. In order for an Accused Device to be connected to U.S. Cellular's wireless system, the device must have a SIM card provided by U.S. Cellular that contains information that is

9

associated with a subscriber's account and which enables the Accused Device to be used on U.S. Cellular's wireless network.  Each Accused Device is enabled or activated by U.S. Cellular through information stored on a SIM card.  In fact, a SIM card can be purchased by or reprogrammed for a subscriber to enable a device not purchased through U.S. Cellular to be used on U.S. Cellular's wireless network (any such phone, tablet or other device utilizing a U.S. Cellular SIM card providing a LAN for tethering or otherwise connecting other devices is also included within the definition of "Accused Devices").  The SIM card is the key by which U.S. Cellular controls which devices may connect to the U.S. Cellular wireless network.  Without U.S. Cellular's SIM card, the Accused Device is useless for its intended purpose of facilitating wireless communications over a wireless network, although certain features such as a calculator or camera application may still be used.  The code, data, and/or other information stored on the SIM card facilitates U.S. Cellular's control over which devices may be connected to the U.S. Cellular wireless communications network.  The SIM card identifies the subscriber to U.S. Cellular's network and facilitates U.S. Cellular in billing the user for the services that the subscriber uses.  In addition, in the event the subscriber's service or subscription is terminated, U.S. Cellular may de-activate the device via the use of the code, data, and/or other information stored on the SIM card so that the device cannot connect to the U.S. Cellular telecommunications network.

26. At least as to the Accused Phones and the Accused Tablets, the data plan typically, without additional fees, only allows the device itself to connect to the U.S. Cellular wireless network.  In order to connect other devices through the LAN provided by one of the Accused Phones or the Accused Tablets, historically, a subscriber has paid an additional fee or subscribed to a more expensive and a higher capacity data plan for the ability to "tether"

additional devices through the Accused Phone or Accused Tablet over the LAN provided by same. *See, e.g.*, Exhibit 11, p. 158 ("You must have a tethering plan on your account in order to use the Portable Wi-Fi hotspot."). On information and belief, U.S. Cellular has previously charged a monthly fee of forty-five dollars ($45.00) for 4 GB, fifty dollars ($50.00) for 5 GB, and ninety dollars ($90) for 10 GB of this additional "tethering" capability. *See, e.g.*, Exhibit 15, "U.S. Cellular overhauls voice, data pricing plans, promises LTE expansion," available at: http://www.fiercewireless.com/story/us-cellular-overhauls-voice-data-pricing-plans-promises-lte-expansion/2012-05-04. More recently, U.S. Cellular "tethering" appears to be included in some of U.S. Cellular data plans, although U.S. Cellular continues to charge $20.00 per month for mobile hotspot devices. Exhibit 16, "Shared Connect Plans," available at: http://www.uscellular.com/uscellular/plans/showPlans.jsp?plan-selector-type=shared&type=plans. Even when an additional fee is not charged by U.S. Cellular for tethering and/or mobile hotspot service, the use of tethering and/or mobile hotspot service results in a higher amount of data downloaded by a subscriber, which in turn results in higher fees to U.S. Cellular.

27. Telecommunications services offered for sale and sold by U.S. Cellular in connection with the Accused Devices, including but not limited to the "Tethering" services, the "mobile hotspot" service, and the services sold in connection with data plans associated with the Accused Base Stations are referred to herein as the "Accused Services."

28. The U.S. Cellular Accused System and the Accused Devices are collectively referred to herein as the "Accused Instrumentalities." The Accused Instrumentalities and the Accused Services are collectively referred to herein as the "Accused Instrumentalities and Services."

**U.S. Cellular's Infringing Acts**

29.     U.S. Cellular has directly infringed and continues to directly infringe one or more claims of the `074 Patent by making, having made, importing, using, offering for sale, and/or selling the Accused Instrumentalities and Services.

30.     For example, but not as a limitation, U.S. Cellular's direct infringement of Claims 1, 3, and 128 of the `074 Patent is shown in each of the claim charts of Exhibits 17-28.

31.     U.S. Cellular's nationwide wireless telecommunications network is a redundant microwave communications system.

32.     Each of the Accused Instrumentalities is capable of providing a wireless local area network.

33.     Each of the Accused Instrumentalities is capable of providing a mobile Wi-Fi Hotspot.

34.     Each of the Accused Instrumentalities is capable of acting as a mobile hub station.

35.     Each of the Accused Instrumentalities is capable of transferring information between U.S. Cellular's microwave communication system and a wireless LAN using an ethernet packet switching protocol.

36.     Each of the Accused Instrumentalities is capable of transferring information between U.S. Cellular's microwave communication system and a wireless LAN using the TCP/IP protocol.

37.     Each of the Accused Instrumentalities is capable of transferring information between U.S. Cellular's microwave communication system and a wireless LAN using an Internet protocol.

38. Therefore, by way of example, but not as a limitation, U.S. Cellular has and continues to directly infringe Claims 1, 3, and 128 of the `074 Patent. In addition, U.S. Cellular has and continues to infringe other Claims of the `074 Patent.

39. Furthermore, U.S. Cellular has engaged in indirect infringement since at least as early as the time of service of the present complaint and continues to indirectly infringe one or more claims of the `074 Patent by providing its customers with the infringing Accused Instrumentalities and Services in order to enable those customers to use the U.S. Cellular Accused System in connection with one or more of the Accused Devices in a manner covered by one or more of the claims of the Asserted Patent. U.S. Cellular has and continues to actively promote tethering and/or local hotspot functionality to its subscribers knowing that the subscriber's utilization of such tethering or local hotspot functionality on one or more of the Accused Devices constitutes infringement of one or more claims of the Asserted Patent. Each subscriber that has tethering or local hotspot capability as part of his or her (or in the case of an entity, its) U.S. Cellular data plan or that pays an extra fee for tethering or local hotspot service in connection with an Accused Device directly infringes one or more claims of the Asserted Patent by his or her (or in the case of an entity, its) use of the Accused Instrumentalities in connection with tethering or local hotspot service.

**FIRST CLAIM FOR RELIEF**
**(Infringement of the `074 Patent)**

40. Advanced Media incorporates paragraphs 1 through 39 as though fully set forth herein.

41. Upon information and belief, Defendant U.S. Cellular has been, and is now, directly and/or indirectly infringing one or more claims of the `074 Patent by (1) making, importing, using, offering for sale, and/or selling the patented inventions, (2) by actively

13

inducing others to use the patented inventions, and/or (3) by contributing to the use of the patented inventions in the United States.

42. More particularly, without limitation, U.S. Cellular has been and is now directly infringing one or more claims of the `074 Patent by making, importing, using (including use for testing purposes), offering for sale, and/or selling the Accused Instrumentalities and Services, all in violation of 35 U.S.C. § 271(a).

43. In addition and/or in the alternative, U.S. Cellular has been, and is now, indirectly infringing one or more claims of the `074 Patent by (1) inducing customers to use the Accused Instrumentalities and Services to directly infringe one or more claims of the `074 Patent in violation of 35 U.S.C. § 271(b), and/or by (2) contributing to customers' direct infringement of one or more claims of the `074 Patent by their use of the Accused Instrumentalities and Services in violation of 35 U.S.C. § 271(c).

44. More particularly, U.S. Cellular has engaged in indirect infringement by its conduct since at least as early as the time of service of the present complaint in providing its subscribers with infringing Accused Instrumentalities in order to enable those customers to use the Accused Instrumentalities and Services in a way that directly infringes one or more claims of the Asserted Patent. On information and belief, U.S. Cellular has intended, and continues to intend, to induce patent infringement by its customers, and has either had knowledge of the `074 Patent and knowledge that the induced acts would constitute infringement or has been willfully blind to the possibility that the induced acts would constitute infringement. Alternatively, on information and belief, U.S. Cellular has made, imported, used, sold and/or offered for sale one or more of the Accused Instrumentalities and Services with knowledge of the `074 Patent and with the intent that such Accused Instrumentalities and Services be used in connection with an

infringing system with the knowledge that such system would infringe, or, in the alternative, being willfully blind that such system would infringe.

45. Advanced Media has been damaged by the infringing activities of U.S. Cellular, and will be irreparably harmed unless those infringing activities are preliminarily and permanently enjoined by this Court. Advanced Media does not have an adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Advanced Media requests the following relief:

(a) A judgment in favor of Advanced Media that U.S. Cellular has directly infringed and/or has indirectly infringed by way of inducement and/or contributory infringement of one or more claims of the Asserted Patents;

(b) A judgment that Advanced Media has been irreparably harmed by the infringing activities of U.S. Cellular, and is likely to continue to be irreparably harmed by U.S. Cellular's continued infringement;

(c) Preliminary and permanent injunctions prohibiting U.S. Cellular and its officers, agents, servants, employees and those persons in active concert or participation with any of them, as well as all successors or assignees of the interests or assets related to the Accused Instrumentalities, from further infringement, direct and indirect, of the Asserted Patents;

(d) A judgment and order requiring U.S. Cellular to pay Advanced Media damages adequate to compensate for infringement under 35 U.S.C. § 284, which damages may include lost profits but in no event shall be less than a reasonable royalty for their usage of the inventions of the Asserted Patents, including pre- and post-judgment interest and costs, including expenses and disbursements;

(e) A judgment awarding Advanced Media its costs as provided under Fed. R. Civ. P. 54(d)(1);

(f) A judgment for pre- and post-judgment interest on all damages awarded;

(g) A judgment awarding Advanced Media post-judgment royalties; and

(h) Any and all such further necessary or proper relief as this Court may deem just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Advanced Media hereby demands a trial by jury of all issues so triable.

OF COUNSEL

**BUETHER JOE & CARPENTER, LLC**
Brian A. Carpenter
Eric W. Buether
Christopher M. Joe
Mark D. Perantie
1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone: (214) 446-1273
Facsimile: (214) 635-1829
*Eric.Buether@BJCIPlaw.com*
*Brian.Carpenter@BJCIPlaw.com*
*Chris.Joe@BJCIPlaw.com*
*Mark.Perantie@BJCIPlaw.com*

Date: January 5, 2015

**FOX ROTHSCHILD LLP**

*/s/ GREGORY B. WILLIAMS*
Gregory B. Williams (I.D. #4195)
Citizens Bank Center
919 N. Market Street
Suite 300
Wilmington, DE 19899-2323
(302) 622-4211
(302) 656-8920 – Fax
gwilliams@foxrothschild.com

*Attorneys for Plaintiff*
*Advanced Media Networks, LLC*